Filed 6/22/16  P. v. Jackson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>GEORGE L. JACKSON,<br><br>  Defendant and Appellant. | 2d Crim. No. B265536<br>(Super. Ct. No. MA062561)<br>(Los Angeles County) |

George L. Jackson appeals judgment after conviction by plea of no contest to possessing contraband and a cell phone in jail.  (Pen. Code, §§ 4573.6, subd. (a), 4576, subd. (a).)[1]  He admitted he suffered a prior strike conviction and served a prior prison term.  (§§ 667, subds. (a)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)  The trial court sentenced him to four years in prison.  It granted his request for a certificate of probable cause.

We conclude the court did not err when it refused to conduct a competency hearing.  Jackson's depression about serving additional prison time and his disruptive behavior did not raise a doubt about his competence.  (§ 1368.)  We therefore affirm.

---

[1] All further statutory references are to the Penal Code.

BACKGROUND

In 2014, Jackson was serving an eight year prison term for residential burglary. A custodial officer searched him and found marijuana and two cell phones. The resulting new charges exposed Jackson to nine additional years in prison.

During the year prior to trial, Jackson did not show any sign of bizarre behavior or mental illness, until the court set the case for trial. Jackson appeared in court approximately 18 times after the preliminary hearing. On the date set for trial, March 10, 2015,[2] Jackson refused to leave his cell. A custodial officer admonished him that the case would proceed in his absence. The court trailed the matter to March 17.

Jackson did not appear in court on March 17. His attorney said, "my client does not want me to announce ready for trial. I have no good cause to seek a continuance." The court transferred the case for trial assignment.

Jackson appeared for the trial assignment later that morning. He participated with his attorney in settlement negotiations. He made a *Marsden*[3] motion which the court denied. The court assigned the matter for trial. Jackson said, "I object." The court reassigned the case to another judge.

In the trial judge's courtroom half an hour later, Jackson told his attorney to ask for a continuance so private counsel could substitute in. The court denied the request. The court announced it was ready to proceed to trial. Jackson told his attorney to say he "objects to this entire proceeding." The court reminded Jackson that he faced up to nine years more in prison and asked if he would be interested in an offer of four years. Jackson responded, "I object to everything." The court said it would proceed to jury trial. Jackson responded, "I object." The court admonished Jackson to cooperate in the proceedings. Jackson responded, "I object to everything."

The court explained, "I want you to be here to assist your lawyer. But any sort of disruption, verbal or physical disruption, may result in you being removed. [¶]

---

[2] All future dates are in the year 2015.
[3] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2

Do you understand, sir?" Jackson responded, "I object." The court stated it would order a jury panel for the following afternoon.

The next day, just before the jury panel was brought in, Jackson requested permission to represent himself. Jackson assured the court that he was ready to go to trial and to select a jury that afternoon. In a lengthy exchange, Jackson said he had read and understood the *Faretta*[4] advisement and waiver form, he understood the charges against him, and he understood the disadvantages and risks of representing himself. The court granted Jackson's request. It appointed standby counsel. Jackson said, "[D]o we have to select a jury today[?] [¶] . . . [¶] I have been trying to hire a lawyer," and, "I'm not prepared today to come in and select my jury and I don't even know what the hell I'm doing." The court asked if he was changing his mind about self-representation. Jackson said, "No, I'm not." Jackson conferred with his former counsel, and then answered, "Ready."

The court took a 15-minute recess to bring in the jury panel. Jackson refused to come back to court. Jackson told the bailiff and his former counsel he was hearing voices and did not understand what was going on. The court asked former defense counsel if he had any previous concerns about Jackson's competence. Counsel said he did not, other than disagreeing with Jackson's decision not to accept the offer.

The court revoked Jackson's propria persona status and reappointed former counsel. It allowed counsel time to confer with Jackson in custody.

Counsel returned and said, "I feel I have no choice but to declare a doubt as to his competency. I'll leave it up to the court how to react, but I'm not -- I have not been able to have any kind of coherent conversation with him." Counsel said Jackson told him he was hearing voices and intended to commit suicide that night. He said Jackson prepared motions that referred to a past history of suicide attempts. Counsel reviewed Jackson's prison records and noted that Jackson received mental health assessment and services in prison.

---

[4] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

The court found there was no substantial evidence to raise a doubt about Jackson's competence. It appeared to the court that Jackson was trying to delay the proceedings. But in an "abundance of caution," it ordered a psychiatric examination. It proceeded with voir dire.

Back in custody, Jackson said he had swallowed a razor blade. He was hospitalized. A CT scan found nothing. He remained on suicide watch.

Jackson refused to attend the next court appearance and stated that he was hearing voices. The court found he had voluntarily absented himself. The court reviewed the psychiatric evaluations. They reported depression and suicidal ideation, but no problems with orientation, concentration, behavior, delusions, speech, insight, or judgment. Jackson told evaluators that voices were telling him to kill himself, but there were no objective signs of psychosis. Malingering could not be ruled out. Jackson told an evaluator, "I'm depressed about my court hearing. I was almost to parole, few months left only. But now I might get additional time, maybe 9 years."

The court concluded there was no substantial evidence to raise a doubt about Jackson's competence, and that his actions were an attempt to delay. Defense counsel moved for a mistrial. The court denied the motion, stating that Jackson was not entitled to benefit from his own misconduct in disrupting the proceedings. The court scheduled opening statements for the next day.

Jackson appeared the next day, participated in settlement negotiations, answered the court's questions coherently, pled no contest to the charges, and admitted the alleged priors. The court denied his motion to strike the prior strike and sentenced him to four years in prison.

DISCUSSION

A criminal defendant may not be tried while mentally incompetent. (U.S. Const., 14th Amend.; § 1367, subd. (a); *People .v Ary* (2011) 51 Cal.4th 510, 517.) Mental competence requires ability to understand the nature of the criminal proceedings and to assist counsel in the conduct of a defense in a rational manner. (§ 1367, subd. (a); *People v. Mendoza* (2016) 62 Cal.4th 856, 871.) If the trial court is presented with

4

substantial evidence that raises a reasonable doubt about a defendant's mental competence, the court must conduct a hearing to evaluate his or her mental state before proceeding to trial, even if it believes the defendant is competent. (§ 1368, subd. (a); *People v. Mendoza*, at pp. 884-885.) If a trial court does not conduct a required competence hearing, the judgment must be reversed. (*People v. Young* (2005) 34 Cal.4th 1149, 1217 (*Young*).)

On review, we determine whether, as a matter of law, the evidence raised a reasonable doubt as to defendant's mental competence, considering all relevant facts in the record. (*Young*, *supra*, 34 Cal.4th at p. 1217.) "A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial." (*People v. Rogers* (2006) 39 Cal.4th 826, 847.) An appellate court is generally not in a position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper. (*People v. Marshall* (1997) 15 Cal.4th 1, 33.)

There was no substantial evidence to raise a doubt as to Jackson's competence. Jackson may have been suicidally depressed, but evidence of a psychiatric diagnosis that does not impact the defendant's ability to assist in his defense does not raise a doubt about competence. (*Young*, *supra*, 34 Cal.4th at p. 1218.) There was no evidence that Jackson lacked the ability to cooperate with counsel. (See, e.g., *People v. Lewis* (2008) 43 Cal.4th 415, 526 [no qualified expert testified to inability to cooperate], disapproved on another ground in *People v. Black* (2014) 58 Cal.4th 912, 919.)

Jackson may have made bizarre statements when he repeatedly said, "I object," but bizarre statements or actions in isolation do not compel a competency hearing. (*People v. Kroeger* (1964) 61 Cal.2d 236, 243-244 [no duty to conduct competence hearing when defendant feigns insanity].)

Counsel's assertion that Jackson may be incompetent was entitled to some weight, but did not alone compel a competency hearing. (*People v. Mai* (2013) 57 Cal.4th 986, 1033.) Jackson's refusal to cooperate with counsel is not evidence of incompetence. (*Id.* at p. 1034 ["an uncooperative attitude is not, in and of itself,

5

substantial evidence of incompetence"]; *People v. Mendoza*, *supra*, 62 Cal.4th at p. 879 [defendant unwilling but not unable to discuss facts of case with counsel]; *People v. Lewis*, *supra*, 43 Cal.4th at p. 526 [defendant unwilling but not unable to cooperate].)

When Jackson chose to cooperate, he did so competently. For example, during settlement negotiations Jackson's counsel said, "My client would like to resolve the case for concurrent time. And failing that, he would like to run a *Marsden* motion. I have advised him that I don't believe that concurrent time is possible." When the court agreed it was not, Jackson told his attorney to ask the court to strike a prior strike allegation and to offer a low term. The court said it would be willing to accept an open plea and consider a motion to strike at sentencing. Jackson declined.

This case is unlike *People v. Murdoch* (2011) 194 Cal.App.4th 230, in which mental health experts reported that the defendant had a severe mental illness and was competent only while taking medication, which he refused to take. It is more like *People v. Elliott* (2012) 53 Cal.4th 535, 583 in which the defendant's disruptive courtroom behavior (throwing apples and saying "This is shit") was evidence of anger and intent to interrupt the proceedings, but was not evidence sufficient to require a competency hearing.

As noted by the court on March 18, the only evidence of Jackson's mental issues related to stress brought on by an imminent trial. The evidence included his refusal to attend trial, repeated objections to proceeding, and Jackson's own statements of hearing voices and suicidal ideation coupled with his request to delay the trial. But "[t]here was nothing that would indicate that defendant has any sort of mental health issues in terms of his ability to assist his counsel and/or understand the nature of the proceedings and the nature of the charges pending against him." In fact, both before and after that time, Jackson engaged in lengthy colloquies with the trial judge in which he responded coherently to multiple inquiries regarding court proceedings and settlement negotiations. The court correctly found that there was no substantial evidence of mental incompetence within the meaning of section 1368.

6

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

Christopher G. Estes, Judge

Superior Court County of Los Angeles

_____


John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and John Yang, Deputy Attorney General, for Plaintiff and Respondent.